**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1290**

───────────────

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,

        Plaintiff – Appellee,

     v.

MEDICAL STAFFING OF AMERICA, LLC, d/b/a Steadfast Medical Staffing, a limited liability company; LISA ANN PITTS, individually and as owner and officer of the aforementioned company,

        Defendants – Appellants.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:18-cv-00226-RAJ-LRL)

───────────────

Argued: March 9, 2023                        Decided: May 31, 2023

───────────────

Before KING and RICHARDSON, Circuit Judges, and Joseph DAWSON III, United States District Judge for the District of South Carolina, sitting by designation.

───────────────

Vacated and remanded by unpublished opinion.  Judge King wrote the majority opinion, in which Judge Dawson joined.  Judge Richardson wrote a dissenting opinion.

───────────────

**ARGUED:**  Abram John Pafford, MCGUIREWOODS, LLP, Washington, D.C., for Appellants.  Anne Warren King, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee. **ON BRIEF:**  Francis J. Aul, Washington, D.C., Matthew A. Fitzgerald, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellants.  Seema Nanda, Solicitor of Labor, Jennifer S. Brand, Associate Solicitor, Fair Labor Standards Division, Rachel Goldberg, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

In this interlocutory appeal from the Eastern District of Virginia, defendants Medical Staffing of America, LLC, and the company's CEO Lisa Pitts (collectively, "Steadfast")[1] seek to challenge the permanent injunction entered by the district court on the request of the Secretary of Labor. *See Walsh v. Med. Staffing of Am.*, No. 2:18-cv-00226 (E.D. Va. Jan. 14, 2022), ECF No. 324 (the "Order"). Because the injunctive provisions of the Order fail to comply with the requirements of Federal Rule of Civil Procedure 65(d), however, we vacate the injunction and remand for further proceedings.

I.

Following a seven-day bench trial conducted in Norfolk in September 2021, the district court concluded in its Order of January 2022 that Steadfast had misclassified approximately 1100 nurses on its so-called "registry" as independent contractors, when the nurses were actually statutory employees within the meaning of the Fair Labor Standards Act of 1938 (the "FLSA"). The court ruled that Steadfast thereby violated overtime and recordkeeping provisions of the FLSA, and that the nurses were entitled to overtime backpay plus a commensurate award of liquated damages.

Of importance here, the district court, in entering the Order, only briefly addressed the injunctive relief awarded. Specifically, the court recognized that the "evidence

---

[1] We refer herein to the defendants as "Steadfast" because they do business as "Steadfast Medical Staffing."

demonstrates that [Steadfast] . . . never complied with the FLSA and will continue to violate the FLSA, rendering injunctive relief appropriate." *See* Order 30. The court further observed that the "evidence supports [Steadfast's] intent to continue misclassifying the nurses on [its] registry despite [its] familiarity with [Department of Labor] guidance and law to the contrary." *Id.* The court thus concluded that the Secretary of Labor had "shown good cause for enjoining [Steadfast] from violating the FLSA's overtime and recordkeeping provisions." *Id.* Without any elaboration, the court then permanently enjoined Steadfast "from committing further violations of the FLSA." *Id.*

Steadfast timely noted this interlocutory appeal in March 2022, invoking appellate jurisdiction to review the injunction pursuant to 28 U.S.C. § 1292(a)(1) (authorizing jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting . . . injunctions"). Additionally, Steadfast seeks our review of multiple related rulings contained in the Order. *See Mayor of Balt. v. Azar*, 973 F.3d 258, 275 n.7 (4th Cir. 2020) (en banc) (recognizing that "an appeal from an order granting . . . an injunction brings before the appellate court the entire order," such that we may "consider and decide the merits of the case . . . to the extent they relate to the propriety of granting the injunctive relief" (internal quotation marks omitted)).

## II.

In the circumstances presented, we are obliged to vacate the injunction contained in the Order, in that it erroneously fails to comply with the mandatory requirements of Rule 65(d) of the Federal Rules of Civil Procedure. That is, the Order does not adequately "state

3

the reasons why [the injunction] issued"; fails to "state its terms specifically"; and does not "describe in reasonable detail . . . the act or acts restrained or required." *See* Fed. R. Civ. P. 65(d).[2]

Although the parties have not raised any issue as to the injunction's procedural adequacy, our Court has long recognized that the requirements of Rule 65(d) "are mandatory and must be observed in every instance." *See Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) (internal quotation marks omitted). Indeed, "[t]he specificity provisions of Rule 65(d) are no mere technical requirements," as they are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *See CPC Intern., Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). Moreover, our Court has emphasized that, "without specificity, appellate review of an injunctive order is 'greatly complicated, if not made impossible.'" *Id.* (quoting *Schmidt*, 414 U.S. at 477).

---

[2] We also observe that the Order fails to mention or address whether the Secretary of Labor — as the party seeking permanent injunctive relief — has satisfied the four-factor test specified by the Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). Pursuant to the *eBay* test, a plaintiff seeking such an injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391.

4

That is not to say that the injunction's failure to comply with Rule 65(d) deprives us of jurisdiction to review it. To be sure, "an injunction that fails to meet Rule 65(d)'s requirements is nevertheless an 'injunction' for purposes of determining appellate jurisdiction." *See Hatten-Gonzales v. Hyde*, 579 F.3d 1159, 1169 (10th Cir. 2009) (citing *Schmidt*, 414 U.S. at 476). Rather, the procedural infirmities require us to vacate the injunction and remand for further proceedings, which we do without reviewing the injunction's merits or any other aspects of the Order.[3]

## III.

Finally, we observe that the entire premise of our dissenting colleague's view rests upon an invocation of the so-called "principle of party presentation." *See post* at 7 (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578 (2020)). More specifically, the dissent recites that "appellate judges should not resolve an appeal on a theory [they] raised for the first time." *Id.* The fault in the dissent's logic, however, is that it misapprehends the issue that we are called — by the parties — to address in this § 1292(a)(1) interlocutory appeal: whether the district court's permanent injunction is to be dissolved. *Id.* at 8 (dissent explicitly recognizing that Steadfast "ask[s] us to dissolve the injunction"). To reiterate, our Court has recognized — in no uncertain terms — that the requirements of Rule 65(d)

---

[3] During the pendency of this appeal, there have been ongoing proceedings in the district court. Those include disputes over the amount of overtime backpay and liquidated damages owed by Steadfast, as well as contempt proceedings regarding Steadfast's alleged failure to comply with the injunction. We are hopeful that all issues in this matter will be resolved in the lower court before another appeal is pursued.

"are *mandatory* and must be observed in *every instance*." *See Thomas*, 810 F.2d at 450 (internal quotation marks omitted) (emphasis added). Seeking to distinguish the *Thomas* precedent, the dissent calls upon party presentation principles and maintains that we are not entitled to consider Rule 65(d) in these circumstances.

Put simply, the dissent's view of this interlocutory appeal is fatally flawed. As the Seventh Circuit has emphasized, "[a]n injunction imposes burdens on the court that issues it and potentially affects the rights of third parties," such that "the [district] court has a duty independent of the desires of the parties to assure that the injunction is proper." *See Chicago & N. W. Transp. Co. v. Ry. Labor Exec. Ass'n*, 908 F.2d 144, 149 (7th Cir. 1990). Consistent with that sound proposition — and abiding by the mandate of our *Thomas* decision — if a district court has the "duty independent of the desires of the parties" to ensure that an injunction complies with the mandatory requirements of Rule 65(d), we are satisfied that an appellate court possesses the same obligation, despite a party's lack of attention to that issue. *Id.* And that is especially so when the party invoking our jurisdiction under § 1292(a)(1) is seeking dissolution of an injunction.

IV.

Pursuant to the foregoing, we vacate the injunction and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

RICHARDSON, Circuit Judge, dissenting:

Ordinarily we do not raise new claims for litigants. Instead, we rely on "the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578 (2020). As the Supreme Court recently reminded us, appellate judges should not resolve an appeal on a theory we raised for the first time. *See id.* (vacating and remanding a decision "for an adjudication of the appeal attuned to the case shaped by the parties rather than the case designed by the appeals panel"). The majority disregards this principle, deciding this case based on a theory raised for the first time by the panel at oral argument and, even then, affirmatively rejected by the parties.[1] I would respect the adversarial process and address only the arguments raised. And even were I to address the newly raised question—whether the district court's injunction violates the procedural mandates of Federal Rule of Civil Procedure Rule 65(d)—it sure seems that the Order below suffices. So I respectfully dissent.

---

[1] The majority claims the parties—and not the panel—in fact presented this theory. Maj. Op. at 5. According to the majority, simply asking an appellate court to undo a district court's work is akin to presenting each error within that work. So a litigant who appeals from an unfavorable district court decision is raising all the errors that decision contains even if they do not—for lack of a better term—*raise* them.

The implications of this approach are far reaching and would eviscerate the principle of party presentation. Luckily, the Supreme Court has affirmatively rejected it. In *Sineneng-Smith*, the defendant appealed asking the Ninth Circuit to set aside her conviction and declare the law she was prosecuted under unconstitutional. *Sineneng-Smith*, 140 S. Ct. at 1578. On the majority's view, she thus called on the Ninth Circuit to address any error in her conviction. The Supreme Court did not see it quite the same way. In fact, it called the Ninth Circuit's decision to seek out and address an unraised error an abuse of discretion. *Id.*

Until now, this case has boiled down to one question: does Steadfast have to classify its workers as "employees" within the meaning of the Fair Labor Standards Act? The Department of Labor thought so, suing Steadfast for its failure to treat its nurses as statutory employees. Steadfast disagreed, claiming the nurses were independent contractors. It took a week-long bench trial to sort this out. Steadfast lost. The district court determined that Steadfast was violating the Act by treating its nurses as independent contractors and enjoined Steadfast from continuing to do so. Steadfast appealed, arguing that the district court got it wrong and asking us to dissolve the injunction.

Simple. Of course, the question presented is difficult. Deciding whether a worker is an employee or independent contractor is often hard—it requires an indeterminate, multi-factor balancing test. But everyone agreed that was the right question. What's more, everyone agreed what Steadfast must do if it loses on that question: comply with the district court's order to stop violating the Act by reclassifying its nurses as employees. So what is the majority talking about when it says we are obligated to *sua sponte* strike down the injunction for violating Rule 65(d) to "prevent" Steadfast from experiencing "uncertainty and confusion" and to ensure our own appellate review does not become "greatly complicated, if not . . . impossible"? Maj. Op. at 4 (quoting *CPC Intern., Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000)).

I'm not sure. The litigants were not uncertain or confused by the injunction. Both Steadfast and the Department of Labor confirmed at oral argument that they knew exactly what it required. Oral Arg. 22:56–24:05, 52:05–58:34. Their only confusion was seemingly directed at the panel's suggestion that they should be confused. And the

8

injunction does not "greatly complicate" our review. Our task is obvious: decide whether Steadfast's nurses are independent contractors or employees within the meaning of the Act. If they are independent contractors, vacate the injunction. If they are employees, affirm it. Nothing about conducting that review strikes me as "impossible."

But that doesn't slow down the majority. Even while acknowledging "the parties have not raised any issue as to the injunction's procedural adequacy," the majority says we have to address it *sua sponte* because Rule 65(d)'s requirements are mandatory, i.e, they must be observed in every instance. Maj. Op. at 4. Unspoken is the majority's apparent belief that if a rule's requirements are mandatory, an appellate court must ensure they are met even if no party claims otherwise. In other words, mandatory rules operate like jurisdictional rules—we have a duty to assure ourselves that they have been followed no matter how the parties argue the case.

But *every* rule is mandatory. That is why it is called a rule. If it were discretionary, we would call it a suggestion. Just because a rule is mandatory does not mean we, as appellate judges, must ensure it has not been violated. Instead, absent unique circumstances,[2] we address only those violations the parties present to us.

_____

[2] "The party presentation principle is supple, not ironclad." *Sineneng-Smith*, 140 S. Ct. at 1579; *see also id.* at 1582 (addendum). Sometimes acting *sua sponte* is proper. We must do so for jurisdictional defects. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019). We also may do so when there are substantial competing interests favoring such action like protecting a pro se litigant, *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008), or correcting "grossly prejudicial errors of law," *id.* at 262 (Alito, J., dissenting). Of course, we are also able to raise our own reading of the law—even one not pressed by the parties—because we are not limited to the parties' interpretations of the law. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is (Continued)

There is nothing strange about ignoring errors that parties do not brief. Courts ignore procedural errors like this one all the time when parties do not properly present them. Take the Supreme Court's jurisprudence on claims-processing rules for example. Sometimes a statute requires litigants to take certain steps before suing in federal court. Those rules, the Court has said, are "mandatory." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019). Litigants must comply with them in every instance. Yet, unless those steps are jurisdictional, courts must enforce compliance only "if a party properly raises it." *Id.* (cleaned up). Likewise, we have said that Rule 65(d)'s procedural requirements are "mandatory." *Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) (quoting *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967)). District courts must comply with them in every instance.[3] But compliance with Rule 65(d)'s requirements is not jurisdictional. *See Abbott*

_____

properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *see also Richardson v. Kornegay*, 3 F.4th 687, 701 n.9 (4th Cir. 2021) (explaining a court applies the proper standard of review even if it is not properly raised). But the majority does not—and cannot—supply any such justification for its action.

[3] To be clear, *district* courts must comply with them in every instance. Not *appellate* courts. The majority cites to a Seventh Circuit case for the proposition that district courts have an independent duty to ensure an injunction complies with Rule 65. Maj. Op. at 6 (quoting *Chicago & N. W. Transp. Co. v. Ry. Labor Exec. Ass'n*, 908 F.2d 144, 149 (7th Cir. 1990)). No argument here. Yet it need not go so far west to find a citation for that proposition. It is self-evident: rules made for district courts generally must be followed by district courts even if no party asks them to. But, again, that is separate from the question of whether an appellate court must enforce compliance with that rule when no party asks it to.

*Thomas* never suggested otherwise. There, we agreed with a party's appellate contention that the district court violated Rule 65(d). *Thomas*, 810 F.2d at 449. So *Thomas* does not tell us a court must *sua sponte* address a Rule 65(d) violation, it was not even at
(Continued)

*v. Perez*, 138 S. Ct. 2305, 2321 (2018).  So we must enforce Rule 65(d) compliance only "if a party properly raises it."  *See Fort Bend*, 139 S. Ct. at 1849.

Reluctance to decide cases based on procedural errors the parties never raised stems from the fundamental nature of the federal courts.  *See Sineneng-Smith*, 140 S. Ct. at 1579; *Greenlaw*, 554 U.S. at 243–44.  By reaching beyond the parties' presentation to correct unraised procedural defects, we trade our role as neutral arbiter for one of advocacy, robbing the parties of their agency to shape the case in the process.  *See Greenlaw*, 554 U.S. at 243–44.  We also risk making mistakes.  Ronald J. Offenkrantz & Aaron S. Lichter, *Sua Sponte Actions in the Appellate Courts:  The "Gorilla Rule" Revisited*, 17 J. App. Prac. & Process 113, 129 (2016) ("Appellate courts acting sua sponte and without the benefits of the adversarial system can and do make serious errors ….").  A dose of judicial humility requires acknowledging that even seemingly straightforward legal issues can have hidden wrinkles.

This case exemplifies why it is important to let the parties, not judges, decide which issues to raise and brief before courts decide them.  The majority appears to be making an unforced error that might have been avoided with the benefit of briefing.  *See id.*  Do not be deceived by its one-sentence declaration that the injunction did not comply with Rule 65(d).  This is a tricky question.  Yet the majority glosses over it without pausing to give it

---

issue in the case.  Like the Seventh Circuit's decision, *Thomas* simply stands for the point that the district court must follow the rule.

11

the serious consideration it deserves. Acknowledging that I too lack any briefing or party presentation, it sure seems to me that the majority gets it wrong.[4]

Rule 65(d) sets forth three requirements that "[e]very order granting an injunction" must meet. Fed. R. Civ. P. 65(d)(1). The rule's phrasing is important. It sets the level of analysis on the order—the entire order—rather than any one subsection. So, in this case, we check the entirety of the district court's thirty-page Order to see if Rule 65(d) is satisfied.[5]

When checking the entire Order, we ask if it does three things: "state the reasons why it was issued"; "state its terms specifically"; and "describe in reasonable detail . . . the act . . . required" without referring to any "other document." Fed. R. Civ. P. 65(d)(1)(A)–(C). The majority, in one conclusory sentence, says the Order did none of these things. Maj. Op. at 3–4 ("[T]he Order does not adequately 'state the reasons why [the injunction] issued'; fails to 'state its terms specifically'; and does not 'describe in reasonable detail . . . the act or acts restrained or required.'"). A closer look seems to tell a different story.

---

[4] When a party raises an error for the first time on appeal in a civil case, we apply a punishing "fundamental error" review. *In re Under Seal*, 749 F.3d 276, 285–86 (4th Cir. 2014). But the majority—having raised this alleged error on its own and having had its argument expressly disclaimed by the parties—proceeds de novo as though it were a district court considering this matter in the first instance. Still, even under a de novo standard, I see no error.

[5] *Thomas* does not conflict with this conclusion. There, we held that a district court violated Rule 65(d)'s third requirement by referring to "findings of fact and conclusions of law" entered in "a separate document filed the same day as was the [injunctive] order." *Thomas*, 810 F.2d at 450. Here, in contrast, the district court's findings of fact and conclusions of law were contained in the same document ordering injunctive relief. So we can look to the entire memorandum opinion and order without violating Rule 65(d)(1)(C)'s prohibition on referencing other documents.

The Order "state[s] the reasons why it was issued." *See* Fed. R. Civ. P. 65(d)(1)(A). The district court dedicated twenty-nine pages to explaining why and how Steadfast violated the Act by misclassifying its nurses. Then, under a heading entitled "Injunctive Relief," the court said that such relief was "appropriate" because Steadfast had always misclassified its nurses and so never complied with the Act. J.A. 1199. The court also found that Steadfast intended to continue violating the Act in this way. It rounded out the section by determining that "*[t]herefore*, Plaintiff has shown good cause for enjoining" Steadfast from violating the Act.[6] J.A. 1199 (emphasis added). In doing so, this Order adequately stated its reasons.

Although closer calls, the Order also satisfies the second and third requirements. It states the terms of the injunction "specifically." Fed. R. Civ. P. 65(d)(1)(B). And it "describe[s] in reasonable detail" the act required without referring to any other document. Fed. R. Civ. P. 65(d)(1)(C). These requirements ensure that the order provides fair notice of what it requires from the enjoined party. *See CPC Intern.*, 214 F.3d at 459. Whether an injunction gives fair notice is context specific. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1133 (9th Cir. 2006). So did this Order, in context, provide fair notice to Steadfast? It did. The Order enjoined Steadfast from "further violations" of the Act. J.A. 1199. *Further* violations. In other words, a reasonable review of the Order indicates it means Steadfast is enjoined from continuing to violate the Act in ways Steadfast already

---

[6] This language refers to the standard for ordering injunctive relief under the Act, which the district court addressed earlier in the Order. *See* 29 U.S.C. § 217 ("for cause shown").

has.  Could the order have been more clear?  Sure.  But that is always the case.  Rule 65 requires only "reasonable detail," not hindsight perfection.  In reviewing the work of our district-court colleagues, we should generally avoid nitpicking.

And in what ways might Steadfast have already violated the Act, and how might it continue to do so absent an injunction?  The Order tells us, again in the section entitled "Injunctive Relief."  J.A. 1199.  The district court says that Steadfast has never complied with the Act and "will continue" to violate it because it "inten[ds] to continue misclassifying the nurses" as independent contractors.  J.A. 1199.  Not to mention, this section comes on the heels of nearly thirty pages explaining why Steadfast's current classification is unlawful.  So the Order makes it clear that the district court was ordering Steadfast to properly classify its nurses.

By the time Steadfast finished reading the Order, it knew three things:  it violated the Act by misclassifying its nurses, it had been enjoined because it misclassified its nurses, and to comply with the injunction it had to reclassify its nurses.  Keep in mind, this is not just my take on what a reasonable reader could glean from the Order.  It was Steadfast and the Department of Labor's *actual* reading.  They told us so at oral argument.  *See* Oral Arg. 22:56–24:05, 52:05–58:34.  And they both knew all three things without referring to any other document.  Rule 65(d)(1) requires no more.

*          *          *

The litigants will surely be surprised when they read the majority's opinion.  Not because either of them should have been confident they would win.  But because they walked into our court seeking an answer to one question and are leaving with the answer

14

to another.  They are also sure to be disappointed.  They came to us for the resolution of *their* case.  And, as the majority admits, we had the power to give them that.  Indeed, as the majority ignores, we had an obligation to do so.  Yet, instead, we disregarded *their* case and resolved *our* case; just so we could prolong this litigation and send it back for the district court to explain to the parties what they already know.  After that, they can file this same appeal and then—hopefully—we will finally decide the case we were supposed to all along.  It is hard to imagine what the majority thinks it is accomplishing today.  It is even harder to imagine why it felt the need to accomplish it.  I respectfully dissent.